**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PATRICIA FOX, on behalf of herself and all others similarly situated,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **No. 12 C 9350** |
| **RIVERVIEW REALTY PARTNERS, f/k/a Prime Group Realty Trust, et al.,** ) ) ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Patricia Fox, on behalf of a putative class of former preferred shareholders, filed suit against Prime Group Realty Trust (PGRT), its directors, and Five Mile Capital Partners LLC and its affiliates (Five Mile). Fox moved for a preliminary injunction against a proposed cash-out merger, which the Court denied. *Fox v. Prime Group Realty Trust*, No. 12 C 9350, 2012 WL 6680349 (N.D. Ill. Dec. 21, 2012). The Court later granted Fox leave to amend her complaint.

In her amended complaint, Fox alleges that PGRT (now called Riverview Realty Partners), its directors, and its management breached fiduciary duties owed to Fox and other preferred shareholders and that Five Mile aided and abetted these breaches. Fox also alleges self-dealing on the part of PGRT's officers. She also claims that Five Mile breached its fiduciary duties as a majority shareholder and was unjustly enriched as a result. Defendants have moved to dismiss all of Fox's claims for failure to state a claim.

For the reasons stated below, the Court dismisses certain of Fox's claims but declines to dismiss others.

## Background

The Court draws the following facts from Fox's complaint and accepts those facts as true for purposes of the motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

PGRT, now known as Riverview Realty, was a real estate investment trust organized under the laws of Maryland. The company owned, managed, and leased office buildings, including one at 330 N. Wabash Street in Chicago.

In 1998, PGRT issued four million shares of Series B Cumulative Redeemable Preferred Stock. Under the Articles Supplementary governing the preferred shareholders' rights, if dividend distributions were in arrears for six or more quarterly periods, preferred shareholders were entitled to vote for the election of two trustees to serve on the board. Preferred shareholders otherwise were not entitled to vote for board members. The Articles Supplementary also gave shareholders the right to vote on any proposed merger that would result in an exchange of their shares. In order for a merger to take place, at least two-thirds of the preferred shareholders were required to vote in its favor.

In 2005, The Lightstone Group acquired all of PGRT's outstanding common shares. On February 11, 2011, Lightstone transferred all of its common shares back to PGRT for no financial consideration, leaving the preferred shareholders as PGRT's sole shareholders. Various trustees affiliated with Lightstone resigned from the board. The remaining trustees were Patterson, Sabin, Tominus, and Whittemore (the trustee

defendants).

Three days later, on February 14, 2011, PGRT and Five Mile, an investment and asset management company, entered into a joint venture agreement concerning the 330 N. Wabash building as well as a proposed merger agreement. Under the terms of the joint venture agreement, PGRT contributed its interest in the 330 N. Wabash building and approximately $12.3 million in cash. In return, Five Mile contributed $22.2 million in cash and committed to contribute up to approximately $97 million more. In connection with the proposed merger, Five Mile made a tender offer of $5.00 per share for PGRT's preferred shares and offered PGRT's officers retention and incentive plan payments. Fox alleges that the trustee defendants stated in the proposed merger proxy statement that if the merger was not approved, the board would authorize a dividend in the form of common stock to be issued to the preferred shareholders on a basis of one common share for each preferred share outstanding.

On June 6, 2011, at a special meeting of the preferred shareholders, less than two-thirds of the preferred shareholders voted for the merger. In addition to voting down the merger, the preferred shareholders – having last received dividends on January 20, 2009 – exercised their right to elect two trustees: Orticelli and Rameson.

Rather than issuing the promised common stock dividend to the preferred shareholders, the newly constituted board instead amended PGRT's declaration of trust to grant the preferred shareholders voting rights. The board scheduled a meeting for August 23, 2011 to formally review and approve the draft proxy materials, which, among other things, provided for the re-election of the existing board members and set the date for the annual meeting to vote on the amendment, to be held on October 7, 2011.

According to Fox, the trustee defendants specifically told the new board members at the meeting that the goal of the proxy materials was to get the current board re-elected. Though this would have guaranteed the newly-elected board members' positions, the new board members nonetheless sought inclusion of a mechanism that would allow the preferred shareholders to change the composition of the board.

On August 29, 2011, the board met to finalize the proxy materials. It voted to postpone the annual meeting to October 18, 2011. The next day, all board members received the final proxy materials and were advised that they would be delivered to shareholders over the next few days.

Fox alleges that in an attempt to thwart preferred shareholders' control, PGRT's officers used the time leading up to the annual meeting to negotiate a common share issuance and tender offer transaction with representatives of Five Mile. According to Fox, the officers – without any board authority – met and negotiated the deal with Five Mile, retained Duff & Phelps, LLC (D&P) to render a fairness opinion on the consideration offered for both the common and preferred shares, hired Compass Point Research & Trading, LLC (Compass) to conduct a market check, determined that common shares would be sold for $625,000, and agreed to a tender offer at $5.00 per preferred share.

On the evening of October 7, 2011, PGRT's officers e-mailed the board members, announcing a board meeting for October 10, 2011, which was Columbus Day. The agenda included an executive summary stating that "management has negotiated a Stock Purchase Agreement and related agreements with Five Mile Capital Partners LLC." Compl. ¶ 72. The board materials consisted of 171 pages. Orticelli did

4

not receive the e-mail or materials because he had already left town for the holiday weekend. Nevertheless, PGRT's officers denied Orticelli and Rameson's requests to postpone the meeting. Thus on October 10, 2011, the board met as scheduled and voted to approve the common share issuance to Five Mile.

After the sale of common stock to Five Mile closed, Five Mile, pursuant to a settlement agreement in litigation brought by Rameson, agreed to increase its tender offer price for the preferred shares to $5.25 per share. Rameson and a number of other preferred stockholders tendered their shares, leaving Five Mile with 100 percent of PGRT's common stock and sixty-five percent of PGRT's preferred shares. As part of the settlement agreement, Rameson resigned from the board. By March 29, 2012, Five Mile, as majority shareholder for both the common and preferred stock, had "installed and controlled every member of PGRT's board." *Id.* ¶ 93.

Fox alleges that the preferred shares were worth more than $5.25 per share before PGRT issued Five Mile common shares. According to Fox, the 330 N. Wabash building had gained value in 2011, primarily because its attached garage was raising more revenue and because the American Medical Association had signed a letter of intent to lease space in the building beginning in September 2013. Fox also alleges that Five Mile's payment of $625,000 in exchange for all of PGRT's common shares was "inadequate" given that PGRT sold control of the company for only $.10 per share. *Id.* ¶ 76.

On June 26, 2012, Five Mile made an offer to the board to acquire the balance of the preferred shares that Five Mile did not yet own, for $5.25 per share. The next day, the board formed a special committee comprising trustee defendants Sabin,

Whittemore, and Tominus to evaluate the offer. On June 28, 2012, the special committee again retained D&P to provide an opinion on the fairness of the merger consideration. Fox alleges that D&P reported the 330 N. Wabash building's income incorrectly, thereby skewing its valuation of the preferred shares.

On September 21, 2012, Sabin met with members of Five Mile in New York and made a counteroffer of $5.35 per preferred share. On September 24, 2012, Five Mile notified the special committee that it had rejected the counteroffer.

On September 25, 2012, the special committee unanimously voted to recommend the merger to the board. The special committee did not conduct a market check, nor did its recommendation advise that the board require a majority of the minority safeguard on the vote.

The next day, September 26, 2012, board members met to discuss the special committee's recommendation. Three trustees – Leitman, Reynolds, and Patterson – abstained from voting. Trustee Glasgow was not present. The remaining trustees approved the merger.

At the end of October 2012, PGRT issued a proxy statement to the preferred shareholders, after which Fox commenced this suit. On December 5, 2012, approximately seventy-four percent of the preferred shareholders voted in favor of the merger. Fox thereafter moved for a preliminary injunction to bar the merger from proceeding. This Court denied the motion on December 21, 2012.

**Discussion**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). To avoid dismissal for failure to state a claim, a complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Fox asserts five claims against various groups of defendants. In Count 1, Fox alleges that PGRT, PGRT's officers, and the trustee defendants all breached their fiduciary duty of loyalty and care to the preferred shareholders by issuing common stock to Five Mile. In Count 2, Fox alleges that the same defendants and Glasgow, Leitman, and Reynolds breached the same fiduciary duty to the preferred shareholders with respect to the 2012 merger. In Count 3, Fox alleges that Five Mile, as the controlling shareholder of PGRT, breached its fiduciary duty to the preferred shareholders in connection with the 2012 merger. Fox also alleges that Five Mile aided and abetted PGRT, PGRT's officers, and the trustee defendants in their breaches of fiduciary duty in connection with the issuance of common stock to Five Mile. In Count 4, Fox alleges that PGRT's officers engaged in self-dealing. Finally, in Count 5, Fox asserts an unjust enrichment claim against Five Mile.

**I.      Breach of fiduciary duty regarding the issuance of common shares**

**a.      Standing**

In Count 1 of the complaint, Fox contends that the trustee defendants, PGRT's officers, and PGRT breached their fiduciary duty owed to the preferred shareholders by approving the issuance of common shares to Five Mile for allegedly insufficient consideration. As a preliminary matter, defendants argue that Fox has improperly brought this claim directly rather than as a derivative suit and that she therefore lacks standing. To determine whether a shareholder may bring a direct suit under Maryland law (which governs here), a court asks not whether the shareholder suffered injury, but whether the shareholder's injury is "distinct" from that suffered by the corporation. *Strougo v. Bassini*, 282 F.3d 162, 170, 172 (2d Cir. 2002) (applying Maryland law). Thus if a shareholder has alleged either that she suffered direct harm or that a duty is owed directly to her, she may bring a direct suit rather than a derivative shareholder action. *Wasserman v. Kay*, 197 Md. App. 586, 620, 14 A.3d 1193, 1213 (2011).

Applying Maryland's law of shareholder standing, Fox's allegations support the filing of a direct suit. Fox alleges that defendants represented that if the 2011 merger was not approved, the board of trustees would authorize a dividend in the form of common stock to the preferred shareholders, which would have given them voting rights. Compl. ¶ 57. This, Fox alleges, would have allowed common voting control to pass to the preferred shareholders, giving them an opportunity to elect their own trustees, install their own management, and ultimately receive better value for their interests. *Id*. ¶ 79. These allegations are sufficient to allow Fox to proceed directly against defendants. The injury she alleges – a loss in voting power – is one suffered by

the preferred shareholders and not by the corporation.

### b. Trustees

Defendants further argue that Fox's claims against the trustee defendants in Count 1 must be dismissed because the trustees' allegedly improper actions are protected by the business judgment rule. Under Maryland law, corporate directors must perform their duties (1) in good faith, (2) in a manner that the director reasonably believes to be in the best interests of the corporation, and (3) with the care that an ordinarily prudent person in a like position would use under similar circumstances. Md. Code Ann. Corps. & Ass'ns § 2-405.1(a) (2013). The business judgment rule, referenced in the same Maryland statute, establishes a presumption that directors satisfied this duty. *Wittman v. Crooke*, 120 Md. App. 369, 376, 707 A.2d 422, 425 (1998); *see also* Md. Code Ann. Corps. & Ass'ns § 2-405.1(e) ("An act of a director of a corporation is presumed to satisfy the standards of subsection (a) of this section."). This is because the "conduct of the corporation's affairs [is] placed in the hands of the board of directors," so "courts generally will not interfere with the internal management of a corporation." *Devereux v. Berger*, 264 Md. 20, 31, 284 A.2d 605, 612 (1971) (internal quotation marks omitted).

Fox contends that the business judgment rule does not apply because the common share issuance represents a sale of control, which is subject to heightened scrutiny under the so-called "entire fairness" standard. Though this may be true in Delaware, "in Maryland the business judgment rule applies even to directors' change-in-control decisions." *Hudson v. Prime Retail, Inc.*, No. 24 C 03-5806, 2004 WL 1982383, at *11 n.13 (Md. Cir. Ct. Apr. 1, 2004). Indeed, the case law is clear that in Maryland,

the business judgment rule applies unless the relevant transaction is a cash-out merger where the decision to sell the corporation has already been made. *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 345, 983 A.2d 408, 424 (2009); *In re Nationwide Health Properties, Inc.*, No. 24 C 11-001476, 2011 Md. Cir. Ct. LEXIS 3, at *25-27 (May 27, 2011) ("[I]t is clear that *Shenker v. Laureate Education, Inc.*, in its own words, applies only to a very narrow set of circumstances – namely, a cash-out merger when the decision to sell the corporation has already been made.") (internal quotation marks omitted); *Consortium Atl. Realty Trust, Inc. v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 365879-V, 2013 Md. Cir. Ct. LEXIS 2, at *18 (Feb. 5, 2013) ("I agree . . . that *Shenker* is limited, until the Court of Appeals says otherwise, to 'a cash-out merger when the decision to sell the corporation has already been made.'").

The fact that the business judgment rule applies, however, is not sufficient to entitle the trustee defendants to dismissal of Fox's claims. In these circumstances, a plaintiff may survive a motion to dismiss by alleging facts rebutting the presumption that the trustees acted in good faith, *see Hudson*, 2004 WL 1982383, at *11, specifically, that they acted fraudulently, in self-interest, or with gross negligence. *See In re Nationwide*, 2011 Md. Cir. Ct. LEXIS 3, at *45.

Fox does not identify in her complaint any specific acts of fraud or gross negligence. She does, however, allege that the trustee defendants acted in their own self-interest. For instance, Fox alleges that the trustee defendants approved the common share issuance because they wanted to get re-elected to the board and wanted to deprive the preferred shareholders of control. It is true that a director's mere desire to retain directorship is not enough to establish self-interest that overcomes the

10

business judgment rule. *Wittman*, 120 Md. App. at 375-77, 707 A.2d at 425 (strong likelihood that appellees would become directors of newly merged corporation not enough to overcome presumption of business judgment rule); *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 175, (Del. Ch. 2005) ("In most circumstances Delaware law routinely rejects the notion that a director's interest in maintaining his office, by itself, is a debilitating factor."). But a plaintiff can rebut the application of the business judgment rule by showing (at this stage, alleging) that the desire to exercise corporate control drove approval of the transaction at issue. *See, e.g.*, *Packer v. Yanpol*, 1986 WL 4748, at *14-15 (Del. Ch. Apr. 18, 1986) (granting injunction where primary purpose of directors' stock issuance was to obstruct plaintiffs' ability to wage proxy contest in order to maintain themselves in control). Because Fox has alleged exactly that, she has stated a claim against the trustee defendants for breach of fiduciary duty with respect to the common share issuance.

### c. Officers

In Maryland, corporate officers' decisions are also protected by the business judgment rule, because officers owe the same fiduciary duties as directors. *See Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009) ("[F]iduciary duties of officers are the same as those of directors"); *Kaplan v. Centex Corp.*, 284 A.2d 119, 124 (1971) ("[T]he decision of executive officers may also come within the [business judgment rule]."). As discussed earlier, Fox may state a claim for breach of fiduciary duty by the officer defendants by making allegations sufficient to rebut the presumption that they acted in good faith.

Fox alleges in her complaint that the officer defendants entered into negotiations

with Five Mile, retained D&P and Compass, and agreed with Five Mile on the price of

the common shares entirely without board involvement. She further alleges that

management failed to give the board sufficient time to review the proposed transaction

in that it e-mailed the trustees the agenda and delivered the meeting materials,

consisting of 171 pages, only three days before the scheduled meeting was to take

place. Drawing all reasonable inferences in favor of Fox, as required at this stage of the

proceedings, these allegations give rise to a reasonable inference that the officers

negotiated the common share issuance and rushed a review of its terms by the board

primarily to marginalize the preferred shareholders. *See Packer*, 1986 WL 4748, at *14-

15. Fox has therefore stated a claim for breach of fiduciary duty against the officer

defendants.

Defendants contend that because the officer defendants did not approve the

issuance of common shares, they cannot be liable for a breach of fiduciary duty arising

from the issuance of common shares. In support of this argument, defendants cite a

Delaware decision in which the court held that "a director who plays no role in the

process of deciding whether to approve a challenged transaction cannot be held liable

on a claim that the board's decision to approve that transaction was wrongful." *In re Tri-

Star Pictures, Inc. Litig.*, Civ. A. No. 9477, 1995 WL 106520, at *2 (Del. Ch. Mar. 9,

1995). The court in that case, however, found significant not only that the directors did

not vote to approve the challenged transaction, but also that "plaintiffs [did] not contend

that [the directors] played *any* role, open or surreptitious, in formulating, negotiating or

facilitating the transaction complained of." *Id.* at *3 (emphasis added). Because Fox in

fact alleged that the officer defendants played a rather considerable role in negotiating

and facilitating the common share issuance, the fact that they did not actually vote to approve the transaction does not entitle them to dismissal under *Tri-Star Pictures*.

### d. Exculpatory clause

Maryland law permits a real estate investment trust to adopt provisions shielding its directors and officers from liability unless "it is proved that the person actually received an improper benefit or profit in money, property, or services" or where "the person's action or failure to act was the result of active and deliberate dishonesty and was material to the cause of action adjudicated in the proceeding." Md. Code, Cts. & Jud. Procs. § 5-419(c). PGRT's declaration of trust contains such an exculpatory clause limiting the liability of its trustees and officers. The trustee and officer defendants rely on the exculpatory clause in seeking dismissal.

The Court disagrees. Although no Maryland court has yet construed the precise meaning of the statutory phrase "active and deliberate," the Seventh Circuit has suggested that the phrase could reasonably include acts of "fraud" or "wilful neglect of duties." *CDX Liquidating Trust v. Venrock Assocs.*, 640 F.3d 209, 216 (2011). In her complaint, Fox alleges that the trustee and officer defendants failed to issue the allegedly promised common stock dividend to the preferred shareholders and did so as part of a "common plan and scheme" to marginalize them. Compl. ¶ 32. Fox further alleges that by failing to issue common shares to them as promised, the individual defendants breached their fiduciary duty. These allegations can fairly be read as identifying a "wilful neglect of duties." As such, the exculpatory clause in PGRT's declaration of trust does not entitle the trustee and officer defendants to dismissal of Fox's claims at the pleading stage.

### e. PGRT

Finally, Fox alleges that PGRT breached its purported fiduciary duty to the preferred shareholders in connection with the common stock issuance. A company, however, does not owe fiduciary duties to its shareholders. *A.W. Fin. Servs., S.A. v. Empire Resources, Inc.*, 981 A.2d 1114, 1127 n.36 (Del. 2009) ("Under Delaware law, the issuing corporation does not owe fiduciary duties to its stockholders.") (internal quotation marks omitted); *see also Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992) ("The only defendant is the corporate entity . . . so there are no fiduciary duty claims"). The Court therefore dismisses this claim against PGRT.

## II. Breach of fiduciary duty regarding the cash-out merger

### a. Individual defendants

In Count 2, Fox asserts a breach of fiduciary duty claim regarding the 2012 merger against the same defendants she named in Count 1, plus Glasgow, Leitman, and Reynolds. Because that transaction was a cash-out merger, the Court must determine whether Fox has stated a claim for relief under the heightened scrutiny of the entire fairness standard, which as indicated earlier applies to such transactions.

The entire fairness standard has two basic requirements: fair dealing and fair price. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983). The fair dealing requirement involves process, and asks "when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and stockholders were obtained." *Id.* The fair price requirement concerns the "economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that

affect the intrinsic or inherent value of a company's stock." *Id.*

Fox has sufficiently alleged facts from which one reasonably could infer that the process used to evaluate the 2012 merger and the price that the individual defendants agreed to were unfair. With respect to unfair dealing, Fox alleges that the special committee failed to conduct a market check or require a "majority of the minority" safeguard on the vote, and that certain board members nonetheless approved the merger agreement. Fox further alleges that the price agreed to by the special committee and approved by board members was too low, in part due to management having undervalued PGRT's assets. The Court acknowledges that it earlier concluded, when Fox moved for a preliminary injunction, that she had not shown a likelihood of success on the merits of this claim. The standard on a motion to dismiss, however, is different. The Court is not weighing and assessing the evidence but rather must accept all of the plaintiff's allegations as true. Applying that standard, Fox has alleged enough to state a breach of fiduciary claim against the individual defendants with respect to the 2012 cash-out merger.[1]

     **b.**    **PGRT**

As discussed earlier, companies do not owe fiduciary duties. The Court therefore dismisses Count 2 as to PGRT.

---

[1] Defendants argue that certain trustees and officers cannot be held liable because they did not vote to approve the 2012 merger. The Court rejects this argument for the same reason that it rejected the parallel argument concerning the common stock issuance. Plaintiffs have alleged that the trustees, management, and the special committee all participated in making the transaction unfair in price or process. That is sufficient to state a claim against the named individual defendants.

III.     **Claims against Five Mile**

a.     **Breach of fiduciary duty by Five Mile**

In Count 3, Fox alleges that Five Mile, as a controlling shareholder of PGRT, owed and breached its fiduciary duties to the preferred shareholders when it proposed and negotiated the 2012 merger with PGRT board members, all of whom Five Mile had installed.  Fox alleges that "[b]ecause Five Mile effectively negotiated the [b]uyout with *themselves*, the [b]uyout was unfair in price and process to the minority holders of the B Shares."  Compl. ¶ 135 (emphasis added).

The Court concludes that Fox has stated a claim against Five Mile for breach of fiduciary duty.  The law is clear that controlling shareholders owe a fiduciary duty to minority shareholders.  *Oliver v. Boston Univ.*, No. Civ. A. 16570-NC, 2006 WL 1064169, at *19 n.185 (Del. Ch. 2006) ("A shareholder that owns a majority interest in a corporation, or exercises actual control over its business affairs, occupies the status of a fiduciary to the corporation and its minority shareholders."); *see also Strougo*, 282 F.3d at 173 ("Maryland law also makes clear that the fiduciary duties owed minority shareholders by majority shareholders are actionable . . .") (citing Maryland cases). Further, Five Mile cannot take advantage of the presumption of good faith ordinarily available under the business judgment rule, because Fox has adequately alleged that Five Mile stood on both sides of the transaction.  *See In re Budget Rent A Car Corp. S'holders Litig.*, No. 10418, 1991 WL 16472, at *225 (Del. Ch. Mar. 15, 1991) ("It is settled law that the entire fairness of a transaction will be scrutinized by the courts where a majority of the directors approving the transaction were interested or where a majority stockholder stands on both sides of the transaction."); *Jedwab v. MGM Grand*

*Hotels, Inc.*, 509 A.2d 584, 594-95 (Del. Ch. 1986) (noting that although entire fairness standard is not implicated by showing that a controlling shareholder fixed the terms of a transaction and, by exercise of voting power, compelled its effectuation, that standard applies when the fiduciary is on both sides of the transaction).  The Court therefore declines to dismiss Five Mile's breach of fiduciary duty claim against Five Mile.

>    **b.**    **Aiding and abetting**

Fox also alleges in the same count of her complaint that Five Mile aided and abetted the individual defendants' alleged breaches of fiduciary duty in connection with the issuance of common stock to Five Mile.  To state a claim for aiding and abetting under Maryland law, a plaintiff must allege:  (1) a tort or other violation of the law by the principal (in this case, the individual defendants); (2) the alleged aider and abettor (Five Mile) knew of the violation; and (3) the aider and abettor gave substantial assistance or encouragement to the principal to engage in the tortious or unlawful conduct.  *See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 186, 665 A.2d 1038, 1043 (1995).

Fox has failed to allege that Five Mile provided "substantial assistance" to the individual defendants to breach their fiduciary duties by issuing common stock.  For the most part, Fox simply sets forth a legal conclusion that Five Mile "participated in the unfair [c]ommon [s]tock [i]ssuance by knowingly encouraging, inciting, and providing substantial assistance" – a bare recitation of the third element of the test.  Compl. ¶ 138.  The only concrete factual allegation that Fox has made is that Five Mile encouraged the officer defendants to breach their fiduciary duties "[b]y agreeing to provide incentive and retention plan payments."  *Id.*  But, according to Fox, Five Mile offered such payments in

connection with the 2011 merger, and that transaction failed. Fox does not allege that these same or other incentives were again promised if the common stock issuance – the transaction upon which this claim is premised – went forward. The Court therefore dismisses her aiding and abetting claim.

## IV.     Self-dealing by officer defendants

Fox contends that the officer defendants engaged in self-dealing during the common stock issuance and the subsequent 2012 merger. She claims that the officer defendants breached their fiduciary duties to provide for themselves (1) continued employment, (2) retention plan payments, and (3) an opportunity to invest in the 330 N. Wabash building.

Fox's allegations are insufficient to state a self-dealing claim against the officer defendants. First, she has not alleged why continued employment would rise to the level of self-dealing. As discussed above, the hope or promise of continued employment alone does not constitute self-interest, let alone self-dealing. *See, e.g., Wittman*, 120 Md. App. at 375-77, 707 A.2d at 423-25. Second, Fox does not allege that the officer defendants were ever offered or ever received any retention plan payments in connection with either of the transactions at issue – only that Five Mile offered such incentives as part of the failed 2011 merger. Finally, Fox has alleged no facts indicating why the officer defendants' "opportunity to invest" in real estate amounts to self-dealing. "[T]he alleged benefit [must be] significant enough *in the context of the [officer's] economic circumstances*, as to have made it improbable that the [officer] could perform [the officer's] fiduciary duties . . . ." *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (internal quotation marks omitted). The Court cannot divine from the

complaint why this purported opportunity would have been particularly valuable in the context of any of PGRT's officers' economic circumstances such that it would have made it improbable for the officer to perform his duties.  The Court therefore dismisses Count 4 against the officer defendants.

## V.      Unjust enrichment claim against Five Mile

To state a claim for unjust enrichment under Maryland law, a plaintiff must allege that (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant was aware of the benefit; and (3) the defendant accepted or retained the benefit under circumstances that make it inequitable for the defendant to do so without the payment of its value.  *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94-95, 747 A.2d 600 (2000).  In her complaint, Fox alleges that Five Mile wrongfully received benefits that had been promised to the preferred shareholders – common shares and their attendant voting rights, and the remainder of the B Shares in the buyout – for which it did not pay adequate consideration.  These allegations are sufficient at the pleading stage to state a claim for unjust enrichment.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss in part and denies it in part [docket no. 70].  Specifically, Counts 1 and 2 are dismissed as to PGRT; the aiding and abetting claim against Five Mile in Count 3 is dismissed; and Count 4 is dismissed.  The motion is otherwise denied.  This case is set for a status hearing on May 23, 2013, at 9:30 a.m. to set a discovery and pretrial schedule.

Counsel are to confer prior to that date so that they can propose a schedule to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 10, 2013